IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | Criminal No. RDB-23-0126 |
| AL TARIQ SMITH, | * | |
| *Defendant.* | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Defendant Al Tariq Smith was arrested after he was found asleep in the driver's seat of a vehicle at a gas pump with a loaded handgun in plain view on the center console. Because he had prior felony convictions, Smith was indicted for possession of ammunition by a prohibited person under 18 U.S.C. § 922(g).[1] Smith now moves to dismiss the indictment on Second Amendment grounds, arguing that the Supreme Court's opinion in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022), has rendered the felon in possession law, 18 U.S.C. § 922(g)(1), unconstitutional both on its face and as applied to Mr. Smith. (ECF No. 36.) Smith also moves to suppress physical evidence, direct and derivative, that was obtained in connection with his warrantless arrest, as well as any and all statements, admissions, and confessions allegedly given by him. (ECF Nos. 34, 35.) The parties' submissions have been reviewed, and this Court held a hearing on the motions on March 14, 2024. *See* Local R. 105.6

---

[1] Under 18 U.S.C. § 922(g)(1), "It shall be unlawful for any person who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year . . . to [ship, transport, possess, or receive] any firearm or ammunition."

(D. Md. 2023). For the reasons stated on the record and more fully stated below, Smith's motions to suppress (ECF Nos. 34, 35) and motion to dismiss (ECF No. 36) are **DENIED**.

## BACKGROUND

On January 17, 2023, at around 9:07 a.m., a Baltimore City 911 caller reported that a gray Jeep had been parked at pump six at the Clark gas station since 2:00 a.m. with someone inside. (ECF No. 48 at 3–4.) The dispatcher noted that the caller sounded concerned. (ECF No. 48-2 at 1.) At approximately 9:28 a.m., officers with the Baltimore Police Department responded to the Clark gas station (located at 1101 West North Avenue, Baltimore City, Maryland) for a wellness check on the person reported to be in the Jeep. (ECF No. 48 at 4.) Baltimore City Police Officer Dollard parked next to the Jeep, and Officer Austin parked next to the sidewalk away from the gas pumps. (*Id.*) Officer Gibbs parked near the convenience store. (*Id.*)

Officer Dollard approached the driver's side of the Jeep and observed Defendant Al Tariq Smith unresponsive in the driver's seat. (*Id.* at 7.) The doors were locked and no one else was inside of the vehicle. (*Id.*) Officer Gibbs approached the front passenger side window. (*Id.*) Officer Dollard attempted to rouse Smith by repeatedly knocking on the window, asking if Smith was okay, and requesting that he wake up. (*Id.*) Officer Gibbs observed a black handgun in plain view on top of the center console. (*Id.*) Officer Gibbs said to Officer Dollard, "hey, he's got a gun." (*Id.*) Officer Gibbs then drew his own firearm. (*Id.*) Officer Dollard continued to try to wake up Smith, who eventually woke up and unlocked the door. (*Id.*) Officer Dollard opened the driver's door and ordered Smith out of the vehicle. (*Id.*) Officer Dollard removed Smith's seatbelt and grabbed Smith's arm as Smith got out of the vehicle.

(*Id.*) Officer Austin approached from the rear of the vehicle and handcuffed Smith upon his exit from the vehicle. (*Id.*)

Officer Gibbs recovered Smith's handgun—a black Polymer80 Inc. model PF940C 9mm that lacked a serial number—and determined that it was loaded. (*Id.*) He rendered the weapon safe. (*Id.*) The officers then learned Smith's identity and that he was prohibited from possessing a firearm due to prior convictions. (ECF No. 36 at 2.) Mr. Smith has prior convictions for second degree assault, violating an ex parte/protective order, unlawful possession of a controlled dangerous substance, fourth degree burglary, riding a dirt bike, attempting to elude police by fleeing on foot, and possession with intent to distribute. (*Id.*)

Smith was originally charged in Baltimore City Circuit Court. Those charges were dismissed in favor of federal prosecution. Mr. Smith was indicted and charged federally with possession of ammunition by a prohibited person on April 6, 2023. (ECF No. 1.) On September 14, 2023, Smith filed a Motion to Suppress Physical Evidence (ECF No. 34), a Motion to Suppress Statements (ECF No. 35), and a Motion to Dismiss the Indictment on Second Amendment Grounds (ECF No. 36). On February 26, 2024, the Government filed a Response to the Motion to Suppress Physical Evidence (ECF No. 48), a Motion for Leave to File Physical Exhibits (ECF No. 49), and a Response to the Motion to Dismiss the Indictment (ECF No. 50). On March 8, 2024, Smith replied to the Government's Response to the Motion to Dismiss. (ECF No. 51.) This Court held a hearing on the motions to suppress and the motion to dismiss on March 14, 2024. (ECF No. 55.) Pursuant to this Court's Order (ECF No. 59), Mr. Smith filed a supplement to his motions to suppress on March 28, 2024. (ECF No. 62.) The Government responded on April 11, 2024 (ECF No. 63), and Mr. Smith replied

on April 25, 2024 (ECF No. 64). Most recently, Smith filed a notice of supplemental authority on June 5, 2024, noting the United States Court of Appeals for the Fourth Circuit's recent decision in *United States v. Canada*, 103 F.4th 257 (4th Cir. 2024).

## ANALYSIS

### I.  Motion to Dismiss Indictment on Second Amendment Grounds (ECF No. 36)

Smith moves to dismiss his indictment, arguing that the Supreme Court's opinion in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022), renders the felon-in-possession law, 18 U.S.C. § 922(g)(1), unconstitutional. Specifically, Smith argues that the statute is unconstitutional both on its face and as applied to Smith's case. Both arguments fail.

#### 1.  Facial Challenge

The Supreme Court has repeatedly emphasized that felon-in-possession prohibitions do not violate the Second Amendment. In *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. City of Chicago*, 561 U.S. 742 (2010), the Supreme Court recognized that the Second Amendment codified a pre-existing "right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense." *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 8–9 (2022). *Heller* previously noted that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons," 554 U.S. at 626, a point which the Court reiterated in *McDonald*. 561 U.S. at 786. In *Bruen*, it noted that the petitioners were "ordinary, law-abiding adult citizens," making them "part of 'the people' whom the Second Amendment protects." 597 U.S. at 31–32. The *Bruen* opinion did not directly address the rights of non-law-abiding citizens under the Second Amendment. *See United States v. Rahimi*, No. 22-915, 602 U.S. ___, 2024 WL 3074728, at *11 (June 21, 2024)

("[*Heller* and *Bruen*] said nothing about the status of citizens who [are] not 'responsible.'"). However, in *Rahimi*, the Supreme Court, via an 8-1 decision, affirmed the right of the government to disarm those determined by a court "to pose a credible threat to the physical safety of another." 2024 WL 3074728, at *11. The nearly unanimous Supreme Court concluded that "[s]ince the founding, our Nation's firearm laws have included provisions preventing individuals who threaten physical harm to others from misusing firearms." *Id.* at *5. It accordingly held that § 922(g)(8), a sister provision of § 922(g)(1), "fits comfortably within this tradition." *Id.*

Even prior to the Supreme Court's recent opinion in *Rahimi*, the United States Court of Appeals for the Fourth Circuit recently rejected a facial challenge to the constitutionality of § 922(g)(1). *United States v. Canada*, 103 F.4th 257, 258 (4th Cir. 2024) (holding § 922(g)(1) facially constitutional "because it has a 'plainly legitimate sweep' and may constitutionally be applied in at least *some* 'set of circumstances'" (quoting *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 (2008))). The Fourth Circuit previously recognized that the Second Amendment has always been a right afforded only to law-abiding citizens. *See United States v. Moore*, 666 F.3d 313, 319 (4th Cir. 2012) ("Thus, we have no difficulty in concluding that § 922(g)(1) is constitutionally valid on its face."); *United States v. Carter*, 669 F.3d 411, 415 (4th Cir. 2012) (declining to find § 922(g)(3) unconstitutional on its face, explaining that "[t]he weight of the right to keep and bear arms depends not only on the purpose for which it is exercised but also on relevant characteristics of the person invoking the right"); *Hamilton v. Pallozzi*, 848 F.3d 614, 626 (4th Cir. 2017) ("[C]onviction of a felony necessarily removes one from the class of 'law-abiding, responsible citizens' for the purposes

of the Second Amendment[.]"). In fact, no federal appellate court has held § 922(g)(1) to be facially unconstitutional post-*Bruen*. *See Canada*, 103 F.4th at 258 ("Indeed, no federal appellate court has held that Section 922(g)(1) is facially unconstitutional, and we will not be the first."). Even the United States Court of Appeals for the Third Circuit, which remains the lone federal appellate court to have held § 922(g)(1) to be unconstitutional *as applied* to a defendant, emphasized that its opinion applied only to the case at hand. *See Range v. Att'y Gen. United States of America*, 69 F.4th 96, 98, 106 (3d Cir. 2023) (en banc) (holding § 922(g)(1) unconstitutional as applied to a defendant whose underlying conviction consisted of making false statements to obtain food stamps).

Judges of this Court and district courts across this Circuit have consistently held that § 922(g)(1) does not violate the Second Amendment post-*Bruen*. *See Cusick v. United States*, No. TDC-22-1611, 2023 WL 5353170, at *5 (D. Md. Aug. 18, 2023) ("[T]he conduct covered by 18 U.S.C. § 922(g)(1) is outside the scope of right covered by the Second Amendment under *Heller, McDonald*, and *Bruen*."); *United States v. Jackson*, No. ELH-22-0141, 2023 WL 2499856, at *7 (D. Md. Mar. 13, 2023) (collecting cases that distinguish convicted felons under § 922(g) from "the people" protected by the Second Amendment after *Bruen*); *Antione v. United States*, No. 1:18CR17, 2023 WL 5573805 (N.D.W. Va. Aug. 29, 2023); *United States v. Manns*, No. 5:22-CR-00066, 2023 WL 3121230 (S.D.W. Va. Apr. 27, 2023); *United States v. Dawson*, No. 3:21-CR-00293-RJC-DCK, 2022 WL 17839807 (W.D.N.C. Dec. 21, 2022); *United States v. Spencer*, No. 2:22-CR-106, 2022 WL 17585782 (E.D. Va. Dec. 12, 2022); *United States v. Wagoner*, No. 4:20-CR-00018, 2022 WL 17418000 (W.D. Va. Dec. 5, 2022); *United States v. Burton*, No. CR 3:22-362-MGL-1, 2022 WL 16541139 (D.S.C. Oct. 28, 2022).

As Smith acknowledges, the Fourth Circuit's ruling in *Canada* "forecloses his facial challenge to § 922(g)(1)."[2] (ECF No. 65 at 2.) Accordingly, because § 922(g)(1) "may constitutionally be applied in at least some 'set of circumstances,'" Smith's facial challenge fails. *Canada*, 103 F.4th at 258.

### 2. As-Applied Challenge

Smith also brings an as-applied challenge. He argues that the reasoning in *United States v. Canada*, 103 F.4th 257, 258 (4th Cir. 2024), applies only to the felonies enumerated in the *Canada* opinion itself. (ECF No. 65.) Because Smith has not been convicted for any of those felonies, he argues that *Canada* does not foreclose his as-applied challenge. He also argues that there is no robust tradition of disarming persons convicted of the crimes of which Smith has been convicted. (ECF No. 36 at 23.) He claims that the "presumptively lawful" language in *District of Columbia v. Heller*, 554 U.S. 570 (2008), regarding the constitutionality of felon-in-possession prohibitions is both mere dictum and incorrect. (ECF No. 36 at 24–28.) Smith also argues that *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), demands discrete tests regarding the similarity of the law at issue and historical regulations, depending on whether the problem being addressed by the modern regulation is novel ("relatively similar" test) or if it existed at the founding ("distinctly similar" test). (ECF No. 36 at 8.)

The Government argues that felons are not included among "the people" for Second Amendment purposes; that prohibiting firearm possession by persons perceived to be dangerous has always been allowed; that the only valid historical test to emerge from *Bruen* is

---

[2] Smith "believes *Canada* was wrongly decided, and continues to preserve [his] claim for possible future review by the Supreme Court or the en banc Fourth Circuit." (ECF No. 65 at 2.)

the "relatively similar" test; and that in any case, § 922(g)(1) is constitutional as applied to Smith because he is a dangerous felon. (ECF No. 50 at 18–19.)

The Fifth, Eighth, and Tenth Circuits have foreclosed the possibility of as-applied challenges to § 922(g)(1) based on a determination that under *Heller*, *McDonald*, *and Bruen*, felons are not among "the people" whose rights are protected under the Second Amendment. *See Vincent v. Garland*, 80 F.4th 1197, 1201–1202 (10th Cir. 2023) (upholding the constitutionality of defendant's conviction under § 922(g)(1)); *United States v. Jackson*, 69 F.4th 495, 505 (8th Cir. 2023) (same); *United States v. Hickox*, No. 22–50365, 2023 WL 3075054, at *1 (5th Cir. Apr. 25, 2023) (declining to overturn defendant's conviction under § 922(g)(1) because "it is not clear that *Bruen* dictates such a result"). However, some courts have allowed as-applied challenges to § 922(g)(1)'s constitutionality after determining that felons are among the Second Amendment's "people." *See, e.g.*, *Range v. Att'y Gen. United States of Am.*, 69 F. 4th 96, 106 (3d Cir. 2023) (en banc)); *United States v. Bullock*, No. 3:18-CR-165-CWR-FKB, 2023 WL 4232309, at *20–21 (S.D. Miss. June 28. 2023).

In *Range*, the Third Circuit declared § 922(g)(1) unconstitutional as applied to the defendant, whose lone conviction was for making false statements to obtain food stamps. 69 F.4th at 98. The Court's analysis turned on its determination of "*who* is among 'the people' protected by the Second Amendment." *Id.* at 101. After determining that "the people" refers to all Americans, and that the legislature may then constitutionally "strip certain groups of [their Second Amendment] right," *id.* at 101, 102 (citation omitted), the Court then examined "whether the Government [was] justified applying § 922(g)(1) to Range," based on the Section's consistency "with the Nation's historic tradition of firearm regulation." *Id.* at 103

8

(citation omitted) (internal quotation marks omitted). The Court held that the Government could not bar Range from possessing firearms. *Id.* at 104–05 ("The Government has not cited a single statute or case [from history] that precludes a convict [like Range] . . . from purchasing [a firearm]."). This holding was predicated upon, among other things, a lack of "relevantly similar" laws depriving criminals of weapons in the wake of convictions for nonviolent offenses, as well as the fact that the original iteration of § 922, the Federal Firearms Act, applied only to violent criminals. *Id.* at 104.

In *Canada*, the Fourth Circuit noted multiple avenues for holding § 922(g)(1) constitutional: (1) felons' non-inclusion in the Second Amendment's definition of "the people;" (2) a well established history of disarming those who threaten public safety; (3) *Heller*'s and *Bruen*'s assurances regarding "longstanding prohibitions" on the possession of firearms by felons; and (4) preexisting circuit precedent. 103 F.4th at 258. The Court elected not to choose any one of those paths alone because "they all lead to the same destination." *Id.* It then provided a nonexhaustive list of felonies that would clearly allow for constitutional application of § 922(g)(1): drive-by shooting, carjacking, armed bank robbery, and assassinating the President of the United States. *Id.* This list illustrated the Court's point that § 922(g)(1) "may constitutionally be applied in at least some 'set of circumstances.'" *Id.* (quoting *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 (2008)).

Most recently in *United States v. Rahimi*, No. 22-915, 602 U.S. ___, 2024 WL 3074728 (June 21, 2024), in an 8-1 decision, the Supreme Court upheld the constitutionality of 18 U.S.C. § 922(g)(8), which allows for the temporary disarming of a person subject to a domestic violence restraining order. In doing so, the Court affirmed the "presumptively lawful" nature

9

of prohibitions on firearm possession by felons. *Id.* at *10 (citing *Heller*, 554 U.S at 626, 627 n.26). Referencing its *Heller*, *McDonald*, and *Bruen* opinions, the Court recognized a longstanding national tradition of "preventing individuals who threaten physical harm to others from misusing firearms." *Rahimi*, 2024 WL 3074728, at *5. To illustrate that point, the Court cited "going armed" laws, which allowed legislatures to disarm individuals whom a court had previously determined had used firearms to menace others. *Id.* at *8.

In this case, even assuming felons are included in "the people" whose rights are protected under the Second Amendment—which is granting Defendant more than the Supreme Court's reasoning in *Rahimi* indicates he deserves—the Government has met its burden under *Bruen* to show that § 922(g)(1) is consistent with a well established tradition of disarming those who threaten public safety. The "relevantly similar" test is the only test valid in determining whether a historical regulation is sufficiently analogous to the current law at issue. *See Rahimi*, 2024 WL 3074728, at *6 ("A court must ascertain whether the new law is 'relevantly similar' to laws that our tradition is understood to permit, 'apply[ing] faithfully the balance struck by the founding generation to modern circumstances.'" (alteration in original) (quoting *Bruen*, 597 U.S. at 24)). There is a well established and representative body of "relevantly similar" laws providing for the constitutionality of disarming those who threaten public safety. The Government addresses this history in its brief by citing the ample Supreme Court precedent—*Heller*, *McDonald*, and *Bruen*—which discusses and confirms that well established national history. (ECF No. 50 at 10–17.) The Government also cites the 1689 English Bill of Rights (*id.* at 15) and colonial-era laws of six states (*id.* at 16–17), tracing the

10

history of the government's ability to limit the initially unfettered right to bear arms to exclude persons deemed dangerous or disloyal.

Smith's circumstances are far different from those of the defendant in *Range*. Unlike the defendant in *Range*, whose lone conviction was for the nonviolent offense of making false statements to obtain food stamps and who perhaps did not even make those false statements willfully, Smith has been convicted of multiple, significantly more serious offenses: second-degree assault, fourth-degree burglary, and unlawful possession of a controlled dangerous substance, to name just three. These charges distinguish *Range* and preclude Smith from skirting § 922(g)(1) via an as-applied challenge. Despite Smith's argument to the contrary, *Canada*'s list of felonies that render § 922(g)(1) constitutional is nonexhaustive. *See Canada*, 103 F.4th at 258. An overwhelming number of courts to have upheld the constitutionality of § 922(g)(1) post-*Bruen*. *See, e.g.*, *United States v. Coleman*, No. 3:22CR87 (DJN), 2023 WL 6690935, at *1–2, *19 (E.D. Va. Oct. 12, 2023) (holding the Second Amendment's "the people" to include felons, but identifying a "robust history of disarming those deemed dangerous to society, like felons," before citing more than 170 federal district court opinions nationwide which have rejected post-*Bruen* challenges to the constitutionality of § 922(g)(1)). In light of the Supreme Court's recent opinion in *Rahimi*, there is even less room for as-applied challenges to § 922(g)(1). Regardless, Smith's prior convictions for assault and burglary render him a dangerous criminal. *See Rahimi*, 2024 WL 3074728, at *9 ("When an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed."). Section 922(g)(1) is therefore constitutionally applied to Smith, and his Motion to Dismiss (ECF No. 36) is DENIED.

11

**II.     Motion to Suppress Physical Evidence (ECF No. 34)**

Smith has moved to suppress direct and derivative evidence from his warrantless arrest. (ECF No. 34.) In analyzing a motion to suppress, the burden of proof is on the defendant. *United States v. Matlock*, 415 U.S. 164 (1974). Probable cause is required for a warrantless arrest. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). The Supreme Court has described "probable cause" to search as "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater*, 532 U.S. at 354.

As the United States Court of Appeals for the Fourth Circuit stated in *United States v. Elston*, 479 F.3d 314 (4th Cir. 2007), "an arrest is defined using an objective standard: whether 'the suspect's freedom of action is curtailed to a degree associated with formal arrest.'" *Id.* at 319 (quoting *Park v. Shifflet*, 250 F.3d 843, 850 (4th Cir. 2001)). "A brief but complete restriction of liberty is valid under *Terry*." *Id.* (quoting *United States v. Leshuk*, 65 F.3d 1105, 1109 (4th Cir. 1995)). The Fourth Circuit has held that even the drawing of weapons, handcuffing of a suspect, and placing the suspect in a patrol car for questioning "do[ ] not necessarily elevate a lawful stop into a custodial arrest." *Elston*, 479 F.3d at 320 (citing *Leshuk*, 65 F.3d at 1109–10); *see also Elston*, 479 F.3d at 321 (holding that the district court did not err by concluding that the suspect's initial detention did not rise to the level of custodial arrest when officers drew their weapons and placed the suspect in handcuffs); *Peters v. City of Mount Rainier*, No. GJH-14-00955, 2016 WL 1239921, at *5 (D. Md. Mar. 24, 2016), *aff'd sub*

*nom. Peters v. Caplan*, 672 F. App'x 327 (4th Cir. 2017) (finding that officers approaching the suspects with guns drawn, requiring them to lie on the ground, and performing a search did not rise to the level of an arrest).

In this case, Officer Dollard and Officer Gibbs responded to a dispatch to check the wellbeing of a person behind the wheel of a car that had been parked at a gas pump for seven hours. Given that the Defendant had been parked at the gas pump for seven hours, the officers were rightly on alert. After Officer Dollard tried to wake up the Defendant, Officer Gibbs saw a handgun in plain view on the center console. Officer Dollard and Officer Gibbs both testified that, according to their familiarity with Maryland law, a firearm must be separated from ammunition and preferably be placed in a lockbox or glovebox to be legally transported in a vehicle. (Tr. 15:15–16, 70:3–5.) Upon seeing the handgun, Officer Dollard removed the Defendant from the vehicle, and Officer Gibbs rendered the weapon, which was loaded, safe. They had probable cause to arrest the Defendant under these facts.

Upon seeing the handgun, the officers had reason to believe that the Defendant had committed a crime under Md. Code Ann., Crim. Law § 4-203(a)(1). That law provides in part that, absent exception, a person may not:

> (i) wear, carry, or transport a handgun, whether concealed or open, on or about the person;
> (ii) wear, carry, or knowingly transport a handgun, whether concealed or open, in a vehicle traveling on a road or parking lot generally used by the public, highway, waterway, or airway of the State . . . .

Md. Code Ann., Crim. Law § 4-203(a)(1). Although Defendant argues that there is insufficient evidence under this statute, he misses the point: the officers needed only probable cause to arrest him, not proof beyond a reasonable doubt. Defendant also argues that the officers did

13

not identify § 4-203(a)(1)(i) during their testimony and that the Government did not raise that subsection in its initial response (ECF No. 48). As to the officers' testimony, the officers testified about their general knowledge of laws regarding the proper transport of firearms, which could involve multiple subsections of § 4-203(a)(1). (See Tr. 15:15–16, 70:3–5.) Defendant's arguments on the merits of the Government's § 4-203(a)(1)(i) argument emphasize that the Government must show "(1) the defendant wore, carried, or transported a handgun, and (2) the handgun was 'on or about the person.'" (ECF No. 64 at 7.) As Defendant's citation to the Maryland Pattern Jury Instructions illustrates, these are facts necessary to be proven at trial when pursuing a conviction under § 4-203(a)(1)(i). But the burden when seeking to establish probable cause is different, particularly in this case where the defendant was indicted on a charge unrelated to the Maryland statute. As to the Government's raising of § 4-203(a)(1)(i) in its response brief, it is clearly a response to Defendant's theory of the case presented at the hearing and in his supplemental brief (ECF No. 62), which requires an adequate response by the Government.

The officers clearly had probable cause. Upon seeing a person behind the wheel of a vehicle at a gas pump, a reasonable person's first thought would be that the person had driven the vehicle to the gas pump. With that in mind, the officers had probable cause to believe the Defendant had driven the vehicle with the gun unsecured. Defendant's argument that the officers had no evidence of the vehicle moving pushes the limits of reason. No reasonable person observing these circumstances would have expected anything other than baseline facts that violate the Maryland statute. Accordingly, the officers had probable cause both to arrest the Defendant and to seize the gun. *See United States v. White*, 549 F.3d 946, 949 (4th Cir. 2008)

("It is well established that officers who have probable cause can search a vehicle without a warrant." (citing *Carroll v. United States*, 267 U.S. 132 (1925)); *see also Arizona v. Gant*, 556 U.S. 332, 338 (2009) (noting that the search-incident-to-arrest doctrine "derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations.")).

Defendant's reliance on *United States v. Graham*, 686 F. App'x 166 (4th Cir. 2017), is misplaced. In that case, while responding to a 911 hang-up call, officers approached a vehicle that was parked illegally in the traffic lane of a road. One of the officers saw open containers of beers in the center console, and after learning that there was a warrant for the driver's arrest in a different city in South Carolina, the officer arrested him. The officers then conducted a custodial interrogation of the defendant without Mirandizing him.[3] That interrogation led to the discovery of a firearm in the vehicle, eventually resulting in charges brought under 18 U.S.C. § 922(g)(1). These basic facts highlight major differences between that case and the instant one. There, the firearm was only discovered pursuant to an illicit custodial interrogation. In this case, the handgun was in plain view on the center console. Moreover, the handgun was easily within the Defendant's reach, whereas in *Graham* the defendant had already been arrested. Lastly, whereas probable cause was established in this case via the Maryland statute, the officers in *Graham* lacked probable cause to search the truck for contraband under 18 U.S.C. §922(g)(1) because they only discovered that the defendant could not possess a gun after the defendant's gun had already been retrieved.

---

[3] *Miranda v. Arizona*, 384 U.S. 436, 444 (1966) (holding that a suspect must, before any questioning, be informed that he has a right to remain silent, that his statements may be used as evidence against him, and that he has a right to an attorney).

15

In sum, the officers had probable cause to arrest the Defendant and to seize the handgun when they saw it in plain view on the center console when responding to a wellness check on him, especially in light of his failure to respond and his presence at the gas pump for seven hours. The officers acted objectively reasonably, and they had sufficient evidence both to arrest the Defendant and to seize the handgun. *See White*, 549 F.3d at 950 ("*Gates*[4] thus directs courts to assess whether officers had probable cause by examining all of the facts known to officers leading up to the arrest, and then asking 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer,' amount to probable cause." (citing *Ornelas v. United States*, 517 U.S. 690, 696 (1996)). Under these facts, evidence obtained in connection with the Defendant's arrest cannot be suppressed. Accordingly, Defendant's Motion to Suppress Physical Evidence (ECF No. 34) is DENIED.

### III.   Motion to Suppress Statements (ECF No. 35)

Defendant also moved to suppress any and all statements he made to law enforcement agents during his arrest. (ECF No. 35.) Defendant argues for suppression chiefly on the basis that the statements were obtained during a custodial interrogation in the absence of *Miranda* warnings. The question thus becomes whether the Defendant was in custody at the time of his interrogation such that *Miranda* warnings were required. *See Miranda v. Arizona*, 384 U.S. 436, 444 (1966); *see also United States v. Parker*, 262 F.3d 415, 419 (4th Cir. 2001) ("Absent formal arrest, *Miranda* warnings only apply 'where there has been such a restriction on a person's freedom as to render him "in custody."'" (quoting *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) (per curiam))). However, the Government notes that it "has not discovered any inculpatory

---

[4] *Illinois v. Gates*, 462 U.S. 213 (1983).

statements the Defendant made in response to any questioning by law enforcement, nor does the Government intend to sponsor any statements made by the Defendant at trial." (ECF No. 48 at 3 n.1.) Defendant does not address this point in any of his supplemental briefing. As neither party has identified any specific statements at issue, and because the Government disavows any intent to sponsor any of the Defendant's statements at trial, the Motion to Suppress Statements (ECF No. 35) is DENIED.

## CONCLUSION

For the reasons stated above, Defendant's Motion to Suppress Physical Evidence (ECF No. 34), Motion to Suppress Statements (ECF No. 35), and Motion to Dismiss the Indictment on Second Amendment Grounds (ECF No. 36) are DENIED.

A separate Order follows.


Dated: July 8, 2024


/s/
Richard D. Bennett
United States Senior District Judge